**CHEMO PURO MFG. CORP.**

v.

**UNITED STATES.**

**C. D. 1668; Protest No. 200274–K.**

United States Customs Court,
First Division.

Dec. 29, 1954.

John D. Rode, New York City, for plaintiff.

Warren E. Burger, Asst. Atty. Gen. (Richard E. FitzGibbon, trial atty.), New York City, for defendant.

Before OLIVER, MOLLISON, and WILSON, Judges.

WILSON, Judge.

The parties to this action have stipulated the facts in this case as follows:

(1) * * * the imported merchandise consists of tannic acid containing by weight of tannic acid fifty per cent or more and medicinal.

(2) That it was assessed for duty at eighteen cents per pound under the provisions of Par. 1 of the Tariff Act of 1930.

(3) That it was produced in the United Kingdom and imported into United States from that country.

(4) That the nutgalls from which the imported merchandise was so produced were of Chinese origin. (R. 3.)

The merchandise involved was assessed by the collector with duty at the rate of 18 cents per pound under the provisions of paragraph 1 of the Tariff Act of 1930, 19 U.S.C.A. § 1001, which provisions cover tannic acid, containing by weight of tannic acid 50 per centum or more and medicinal. The importer claims that the tannic acid in question is properly dutiable at 9 cents, or one-half the

assessed rate, under the same paragraph, as amended by the General Agreement on Tariffs and Trade, 61 Stat. A1157, T.D. 51802.

Paragraph 1 of the Tariff Act of 1930, insofar as applicable to this case, provides as follows:

"Acids and acid anhydrides: * * * tannic acid, tannin, and extracts of nutgalls, containing by weight of tannic acid * * * 50 per centum or more and medicinal, 18 cents per pound; * * *."

Paragraph 1, as amended or modified by T. D. 51802, supra, makes the same product dutiable at 9 cents per pound.

Paragraph 1670 of the Tariff Act of 1930, 19 U.S.C.A. § 1201, provides as follows:

"Dyeing or tanning materials: * * * nutgalls or gall nuts, * * * whether crude or advanced in value or condition by shredding, grinding, chipping, crushing, or any similar process; * * *."

As amended by T. D. 51802, supra, paragraph 1670 provides that "Dyeing or tanning materials: * * * nutgalls or gall nuts, * * * whether crude or advanced in value or condition by shredding, grinding, chipping, crushing, or any similar process," shall be admitted free of duty.

The Trade Agreements Extension Act of 1951, Public Law No. 50, 82d Congress, 65 Stat. 72, 73, 19 U.S.C.A. § 1362, T. D. 52772, provides as follows:

"Sec. 5. As soon as practicable, the President shall take such action as is necessary to suspend, withdraw or prevent the application of any reduction in any rate of duty, or binding of any existing customs or excise treatment, or other concession contained in any trade agreement entered into under authority of section 350 of the Tariff Act of 1930, as amended and extended, to imports from the Union of Soviet Socialist Republics and to imports from any nation or area dominated or con-trolled by the foreign government or foreign organization controlling the world Communist movement."

Pursuant to the foregoing act of Congress, a Presidential proclamation, No. 2935 issued August 1, 1951, T. D. 52788, 19 U.S.C.A. § 1362 note, contained the following provisions:

Part I

" * * * That the application of reduced rates of duty * * * established pursuant to trade agreements * * * shall be suspended with respect to imports from such nations and areas referred to in section 5 as may be specified in any notification pursuant to this part of this proclamation given by the President to the Secretary of the Treasury * * * which are entered, or withdrawn from warehouse, for consumption on such date as may be specified * * *. For the purposes of this part the term "imports from such nations and areas" shall mean articles imported directly or indirectly into the United States from nations or areas specified in an effective notification, but shall not in any case include articles the growth, produce, or manufacture of any other nation or area. * * *"

Subsequent to the issuance of the foregoing proclamation, the President of the United States directed the following letter to the Secretary of the Treasury (T. D. 52788):

"My Dear Mr. Secretary:

"Pursuant to Part I of my proclamation of August 1, 1951, carrying out sections 5 and 11 of the Trade Agreements Extension Act of 1951 [19 U.S.C.A. §§ 1362, 1367], I hereby notify you that the suspension provided for therein shall be applicable with respect to imports from the following nations and areas which are entered, or withdrawn from warehouse, for consumption after the close of business August 31, 1951:

" *     *     *     *     *

"Any part of China which may be under Communist domination or control.

"&ast; &ast; &ast; &ast; &ast;

"Sincerely yours,

"Harry S. Truman."

There is no controversy but that the merchandise imported constituted a tannic acid, produced in the United Kingdom from nutgalls which originated in China, and that China, at the time in question, was a nation not entitled to the benefits of the trade agreement, supra, reducing the rate of duty on tannic acid from 18 cents per pound to 9 cents per pound.

The assessment by the collector in this case was made apparently on the theory that the imported merchandise, produced in the United Kingdom from nutgalls grown in China, was a product of China and, as such, not entitled to the reduced rate of duty accorded under the aforesaid trade agreement. The plaintiff claims that the imported tannic acid is properly classifiable as a product of the United Kingdom and, accordingly, entitled to the reduced rate of duty, viz., 9 cents per pound.

The only issue for determination is, therefore, whether the tannic acid here involved constituted an importation directly or indirectly into the United States from China.

As contended by the Government, there is not any question but that if the nutgalls in question had been imported directly from China to the United States, had such importation been permissible, they would have been subject to the higher rate of duty. It is likewise true that had tannic acid been imported directly from China to the United States, had such importation been permitted, it would have taken the higher rate of duty.

We are of the opinion, however, and hold that the tannic acid in question was not an importation into the United States, directly or indirectly, from China, but that it was an importation from the United Kingdom, which is entitled to the benefits of the lower rate of duty, as provided in the pertinent trade agreement. To hold otherwise would be, in effect, to establish the rule that all importations from the United Kingdom and other favored nations, under the trade agreement in question, processed from raw materials that originated in the Union of Soviet Socialist Republics or in any nation or area dominated or controlled by a foreign government or foreign organization controlling the world Communist movement, would not be entitled to the benefits of the involved trade agreement, but would come within the purview of the exceptions set forth in the Presidential proclamation and be subject to the higher rate of duty.

Tannic acid, under the tariff act, is given an entity, definite and distinct from nutgalls. Tannic acid is provided for under the provisions of paragraph 1 of the Tariff Act of 1930, and nutgalls fall specifically under the provisions of paragraph 1670 of said tariff act.

The case of Shell Oil Company of Canada, Limited v. United States, 27 C.C. P.A., Customs, 94, C.A.D. 68, held that where crude petroleum was exported from the United States to Canada and there subjected to a process through which gasoline was extracted and a "liquid petroleum residue" remained, the product obtained was not the same merchandise that was exported but a distinct product.

In discussing the question as to whether the imported merchandise in that case was the same goods as those exported to Canada, the court held:

"&ast; &ast; &ast; The first question to be determined is whether the imported merchandise is the merchandise that was exported. If it was the same, advance in value and improvement in condition are of importance; if it was not the same, value and condition are inconsequential here.

"&ast; &ast; &ast; &ast; &ast;

"Appellant carried a product of nature—crude petroleum—into Canada and there by a process of manufacture separated certain elements of that product from other elements. Appellant's primary object doubtless was to obtain the element known as gasoline, but in the very process of obtaining this element there was also obtained the merchandise involved. That the gasoline *per se* was a resultant of the process and that it was something distinct from the material exported seems clear, and to us it seems equally clear that the residue occupies the same status. The mere fact that it was not the primary article which appellant desired and that, in a sense, it was "unwanted" does not affect its *per se* status as an article resulting from a process of manufacture in Canada, nor does the fact that its production was an unavoidable result of the process used in obtaining the particular article primarily desired affect that status.

" *   *   *   *   * "

The merchandise here in question, in its condition as imported, is tannic acid, not nutgalls. The identity of the nutgalls, produced in China, has been lost, and a new product with a new name, a new use, and a distinct tariff status has been produced in the United Kingdom, the country of exportation. The imported tannic acid is, therefore, an article the growth, produce, or manufacture of the United Kingdom and dutiable as such. Further, there is nothing in the record to indicate that the original nutgalls were shipped to England with any intent to circumvent the tariff laws of the United States, or even that the nutgalls, when received in the United Kingdom or the products manufactured therefrom, were ultimately destined for the United States market.

For the reasons aforesaid, we hold the imported tannic acid, properly dutiable under paragraph 1 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, at the rate of 9 cents per pound, as claimed.

The protest is sustained. Judgment will be rendered accordingly.